UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS P. FITZGERALD,

                Plaintiff,                No. 05-CV-74768-DT

vs.                                           Hon. Gerald E. Rosen

HRB Management Inc., and The
H&R Block Severance Plan,

                Defendants.
_____/

OPINION AND ORDER DENYING PLAINTIFF'S
PETITION TO COMPEL ARBITRATION

      At a session of said Court, held in
      the U.S. Courthouse, Detroit, Michigan
      on     July 13, 2006

      PRESENT:  Honorable Gerald E. Rosen
                           United States District Judge

## I. INTRODUCTION

Plaintiff Thomas Fitzgerald is a former employee of H&R Block Financial Advisors, Inc.( "HRBFA"), a securities broker-dealer. After his employment was involuntarily terminated in April 2004, Fitzgerald initiated an arbitration action before the dispute resolution division of the National Association of Securities Dealers ("NASD") for breach of contract, fraud, illegal retaliation, civil extortion and violation of the Employee Retirement Income Security Act ("ERISA"), and naming as respondents HRBFA and H&R Block. In their Answer to Fitzgerald's Statement of Claim" in the

arbitration, HRBFA and H&R Block stated that some of the compensation and benefits Fitzgerald was seeking were only obtainable from the H&R Block Severance Plan (the "Plan"), an employee welfare benefit plan established by HRB Management, Inc., an indirect subsidiary of H&R Block, for the benefit of certain subsidiaries of H&R Block, including HRBFA. Fitzgerald thereafter filed an Amended and Restated Statement of Claim seeking to add the Plan and HRB Management, the plan administrator, as parties to the arbitration. These entities, however, refused to agree to arbitrate Fitzgerald's ERISA claims before the NASD. Therefore, Plaintiff initiated this action pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, seeking to compel the Plan and the Plan Administrator to submit to arbitration.

HRB Management and the Plan have responded to Fitzgerald's Petition and Fitzgerald has replied. Having reviewed and considered the parties' briefs and supporting documents, the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II.  PERTINENT FACTS

Plaintiff Thomas Fitzgerald, a licensed and practicing attorney, was hired by OLDE Discount Corporation ("OLDE") as General Counsel on March 6, 1005. At the time of the termination of his employment on April 26, 2004, Fitzgerald held the position of Executive Vice President and Chief Operating Officer of H&R Block Financial Advisors, Inc. ("HRBFA"). (OLDE became HRBFA following the acquisition of OLDE's parent corporation by H&R Block, Inc.) H&R Block, Inc., is a holding company

2

with a number of subsidiaries that provide a wide range of financial services including services relating to securities, mortgages, accounting, and tax preparation.

During Fitzgerald's employment, a dispute arose concerning Fitzgerald's refusal to execute an employment agreement that was being required for each senior executive employee in 2003. Fitzgerald's refusal was based in part on his demand for special treatment regarding accelerated vesting of stock options. Due to these issues and H&R Block's desire to restructure HRBFA's organizational structure, discussions with Fitzgerald over an orderly termination of his employment began in August 2003.

According to Fitzgerald, the proposed agreement that he refused to sign was sent to him under cover of a memorandum signed by Stephanie Otto, on H&R Block, Inc. letterhead, from the Senior Vice President for Human Resources of H&R Block. Ms. Otto, however, was at the time employed exclusively by HRB Management. Fitzgerald tried to negotiate the terms of the proposed agreement directly with Mark Ernst, the President, CEO and Chairman of parent company H&R Block. Ernst is also the President of HRB Management, the administrator of the H&R Block Severance Plan. When Fitzgerald refused to sign the agreement in part because it modified his rights under the Plan, Ernst wrote Fitzgerald telling Fitzgerald that the Plan provisions addressed in the proposed agreement "do not apply to you." *See* Plaintiff's Reply Brief, Ex. E. Although Ernst wrote this letter on H&R Block letterhead, since HRB Management had exclusive authority to make such determinations under the Plan, Plaintiff contends that Ernst could only have made this determination on behalf of HRB.

When by February 2004 a resolution was still not reached between Fitzgerald and his employer concerning the proposed employment agreement, Fitzgerald was informed that it was time to bring an end to the relationship, and on April 26, 2004, Fitzgerald's employment with HRBFA was terminated.

During the course of his employment with HRBFA, Plaintiff signed a Form U-4 titled "Uniform Application for Securities Industry Registration" to become registered as an "Associated Person" of HRBFA. Form U-4 is the standard form that is required for all securities broker-dealers to register their representatives or "associated persons" with the securities' industry's self-regulatory organizations ("SROs"), the NASD and the NYSE. Form U-4 contains a pre-dispute arbitration clause, pursuant to which the applicant who signs the form stipulates:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Item 11 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

*See* Plaintiff's Ex. A.

On May 2, 2005, Fitzgerald initiated arbitration against HRBFA and H&R Block before the dispute resolution division of the NASD. In his Statement of Claim in the arbitration, Fitzgerald asserted claims of breach of contract, fraud, illegal retaliation, civil extortion and for violation of ERISA, all arising out of his employment and termination of his employment, and seeking damages in excess of $3 million. Pursuant to the arbitration

4

provision in Fitzgerald's Form U-4 and the NASD rules, Fitzgerald and HRBFA are required to arbitrate these claims. Although H&R Block is not a member of the NASD and not a party to any arbitration agreement with Fitzgerald, it voluntarily agreed to arbitrate Fitzgerald's claims and submitted a Uniform Submission Agreement to the NASD Dispute Resolution division to that effect.

In their response to Fitzgerald's Statement of Claim, HRBFA and H&R Block stated that some of the compensation and benefits Fitzgerald was seeking was only obtainable from the H&R Block Severance Plan which is administered by HRB Management. Respondents further stated that the Plan and HRB Management are not NASD members and are not parties to any agreement to arbitrate with Fitzgerald. Fitzgerald thereafter filed an Amended and Restated Statement of Claim seeking to add the Plan and Plan Administrator HRB Management as parties to the arbitration. By letter dated October 10, 2005, HRB Management and the Plan, acting thorough the same counsel that represents H&R Block and HRBFA, advised NASD Dispute Resolution that they declined to voluntarily submit to the arbitration of Fitzgerald's claims.

Upon receipt of this declination, on October 11, 2005, the NASD sent Fitzgerald's attorney a letter stating that the NASD does not have jurisdiction over HRB Management or the Plan:

> This letter is to inform you that HRB Management, Inc. and H&R Block Severance Plan, named respondents in the above entitled action have declined to voluntarily arbitrate. HRB Management, Inc. and H&R Block Severance Plan are not compelled by the Rules of NASD Dispute Resolution to arbitrate disputes with you in this forum.

> The arbitration panel will only have the power to render an enforceable award against these respondents if they agree to submit voluntarily to NASD Dispute Resolution's jurisdiction. In the absence of such a voluntary submission, NASD Dispute Resolution has no alternative except to proceed with this action without the participation of these respondents and to advise you to pursue your remedies against them in another forum which does have jurisdiction over them.

[Defendants' Ex. 2.]

Thereafter, on December 15, 2005, Plaintiff filed a Petition in this Court requesting that the Court enter an order and judgment compelling HRB Management and the Plan to arbitrate Plaintiff's ERISA claim in the same arbitration forum with its affiliates, HRBFA and H&R Block.

### III.  DISCUSSION

Under the Federal Arbitration Act, 9 U.S.C. §4,

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court. . . for an order directing that such arbitration proceed in the manner provided for in such agreement.

As the Supreme Court held in *AT&T Technologies v. Communications Workers of America* 475 U.S. 643, 106 S.Ct. 1415 (1985), "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. *Id*. at 648, 106 S.Ct. at 1418. *See also Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248 (1989) ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so."); *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 460, 123 S.Ct. 2402 (2003) ("Arbitration under

the [Federal Arbitration] Act is a matter of consent, not coercion.")

Thus, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625, 105 S.Ct. 3346 (1985). The dispositive inquiry in making this determination is whether there exists an "'express' and 'unequivocal'" agreement between the parties to arbitrate their disputes. *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1512 (3rd Cir. 1994) (citations omitted), *aff'd* 514 U.S. 938 (1995). Thus, as the Second Circuit observed in *Cap Gemini Ernst & Young, U.S. L.L.C. v. Nackel*, 346 F.3d 360 (2nd Cir. 2003), "While the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA 'was to make arbitration agreements as enforceable as other contracts, *but no more so*.'" *Id.* at 364 (citations omitted; emphasis in original).

It is undisputed that HRB Management and the Severance Plan are not parties to any agreement with Fitzgerald to arbitrate. Instead, Plaintiff here relies upon the arbitration provision in his Form U-4 Application and the requirement to arbitrate matters required to be arbitrated under the rules of the self-regulatory organizations referenced therein. Plaintiff's Form U-4 provides in pertinent part,

> . . . I submit to the authority of the. . . SROs and agree to comply with all provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the. . . SROs as they are or may be adopted, or amended from time to time. . . .
>
> \* \* \*
> <u>I agree to arbitrate any dispute, claim or controversy that may arise between</u>

7

> me and my firm, or a customer, *or any other person,* <u>that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Item 11</u> as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

*See* Plaintiff's Ex. A (emphasis added). The SROs (self-regulatory organizations) whose rules are referenced in Plaintiff's Form U-4 are the rules of the NASD and the NYSE.

The Form U-4 signed by Fitzgerald is a contractual agreement between Fitzgerald as an "associated person" and the NASD and the NYSE. *See Gilmer v. Interstate/ Johnson Lane Corp.*, 500 U.S. 20, 25 n. 2, 111 S.Ct. 1647, 1651 n.2 1985); *In re Prudential Insurance Co. of America Sales Practice Litigation*, 133 F.3d 225, 228 n. 5 (3rd Cir. 1998), *cert. denied*, 526 U.S. 817 (1998). In his Form U-4 agreement with the NASD and the NYSE, Fitzgerald agreed to comply with all NASD and NYSE rules and to submit to arbitration "any dispute, claim or controversy . . . that is required to be arbitrated under the rules, constitutions, or bylaws" of those organizations. HRBFA is also subject to the rules of the NASD and the NYSE because it is required to be, and in fact is, a member of those SROs.

Accordingly, Fitzgerald is required to arbitrate all claims "required to be arbitrated" under the Rules of the NASD because of his written agreement with the NASD in the Form U-4, and HRBFA is required to arbitrate the same because it is an NASD member. HRB Management and the Plan, however, are <u>not</u> members of the NASD (or the NYSE). Therefore, they argue that they are not required to arbitrate claims before the NASD pursuant to the rules of that organization.

The applicable NASD Rules provide as follows.

Rule 10101.  **Matters Eligible for Submission.**

This Code of Arbitration Procedure is prescribed and adopted pursuant to Article VII, Section 1(a)(iv) of the By-Laws of the Association for the arbitration of **any dispute, claim or controversy** arising out of or in connection with the business of any member of the Association, or **arising out of the employment or termination of employment of associated person(s) with any member**, with the exception of disputes involving the insurance business of any member which is also an insurance company:

> (a) between or among members;
> (b) between or among members and associated persons;
> (c) between or among members or associated persons and
> public customers, **or others**. . . .

*See* Plaintiff's Ex. J (emphasis added).

Defendants do not dispute that pursuant to this rule, Fitzgerald's claims as an "associated person" against HRB Management, Inc. and the Severance Plan as "others" are *eligible* for arbitration. Thus, if HRB Management and the Plan were to *voluntarily* agree to arbitrate -- as H&R Block, Inc. did -- Fitzgerald's claims against these two entities could be arbitrated before the NASD.

Rule 10201, however, delineates the disputes which are *required* to be submitted to NASD arbitration:

10201.  **Required Submission.**

(a) . . . **[A] dispute, claim or controversy eligible for submission** under the Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, **shall be arbitrated under**

9

>       **this Code at the instance of:**
>
>> (1) a member against another member;
>> (2) a member against a person associated with a member or a person associated with a member against a member; and
>> (3) a person associated with a member against a person associated with a member.

Plaintiff's Ex. K (emphasis added.)

None of the sub-parts of Rule 10201(a) require arbitration "at the instance of" a person associated with a member (i.e., Fitzgerald) against a non-member or a person that is not associated with a member. An associated person may only compel a "member" or another "associated person" to arbitrate an eligible claim; he cannot compel a non-member or a non-associated person to do so.

In *Burns v. New York Life Ins. Co.*, 202 F.3d 616, 619 (2nd Cir. 2000), the court addressed the relationship between Rules 10101 and 10201. While "Rule 10101. . . expansively defines the issues and subject matters that *may* be arbitrated. . . [,] Rule 10201(a) describes a subset of issues as to which certain specified parties may *compel* arbitration." (Emphasis in original.)

Fitzgerald argues that the Third Circuit's decision in *In re Prudential Ins. Co. of America Security Practice Litigation*, *supra*, stands for the proposition that "nonsignatories" to the Form U-4 can be bound to arbitrate under the NASD rules. Fitzgerald, however, misconstrues that case. In *Prudential*, the court noted that the defendant employer had not signed the Form U-4 because that document is a contract between the plaintiff employees and the NASD. 133 F.3d at 228. The employer,

however, was a member of the NASD, and therefore was required to arbitrate all claims required to be arbitrated under the NASD rules. *Id.* at 229. The "nonsignatory" issue before the *Prudential* court was whether the Form U-4 was a "written agreement" to arbitrate for purposes of the Federal Arbitration Act since the employer had not signed the agreement. The court held that since the employer, as a member of the NASD, was an intended beneficiary of the Form U-4, that agreement was sufficient under contract principles for purposes of the Federal Arbitration Act to compel arbitration.

Plaintiff's reliance on *Williams v. Imhoff*, 203 F.3d 758 (10th Cir. 2000), is similarly misplaced. In that case, the court found that since the plaintiffs and defendants were both "associated persons" under the NASD rules, those rules required them to arbitrate the plaintiffs' employment related claims. *Id.* at 764-65. Here, while Fitzgerald is an "associated person," HRB Management and the Plan are not. Accordingly, these entities cannot be compelled under the NASD Rules to arbitrate Fitzgerald's claims.[1]

---

[1] Fitzgerald also claims that the Rules of the NYSE also require HRB Management and the Plan to submit to arbitration. Fitzgerald, however, does not explain how the NYSE arbitration rules can be relied upon to compel arbitration before the NASD. Even if those rules did apply, however, the NYSE rules do not allow an allied member or an associated person to demand that a non-member submit to arbitration. NYSE Rule 600 provides:

> (a) Any dispute, claim or controversy between a customer or non-member and a member, allied member, member organization and/or associated person arising in connection with the business of such member, allied member, member organization and/or associated person in connection with his activites as an associated person shall be arbitrated under the Constitution and Rules of the New York Stock Exchange, Inc., as provided by any duly executed and enforceable written agreement or **upon the**

In sum, because neither HRB Management nor the Plan are members of the NASD or the NYSE, they cannot be required to submit to arbitration under the rules of those organizations. Since they are not required to arbitrate his claims, Fitzgerald cannot rely on his contractual agreement with those SROs in the Form U-4 to compel these entities to arbitrate.

Plaintiff argues, as a separate and independent basis for compelling non-signatories to arbitrate, that the relationship between the signatory, HRBFA, and the non-signatories, HRB Management and the Plan, should be considered. In support, Plaintiff cites cases from the Third, Fourth and Eleventh Circuits and argues that in each of these cases, the courts compelled arbitration because, as in this case, the claims against the signatories were "inherently inseparable" from the claims against the non-signatories. However, what Plaintiff overlooks in each of these cases is that the non-signatory defendants voluntarily submitted to arbitration while the signatory plaintiffs attempted to avoid the arbitration agreements they had signed. This is the inverse of what we have in this case where it is the signatory who seeks to compel the non-signatories to arbitrate.

For example, in *J.J. Ryan & Sones, Inc. v. Rhone Poulenc Textile*, 863 F.2d 315 (4th Cir. 1988), the plaintiff importer had executed exclusive distribution agreements with

---

**demand of the customer or the non-member**.

In this case, it is undisputed that there is no written agreement between Fitzgerald and HRB Management and the Plan, and the non-members, HRB Management and the Plan are not demanding arbitration.

two French subsidiaries of Rhone Polenc Textile, S.A. that contained arbitration clauses. After a failed acquisition attempt, Rhone Poulenc directed its subsidiaries to terminate the agreements. The plaintiff brought suit alleging various causes of action against the distributor subsidiaries and Rhone Poulenc, the parent company. The defendants responded by moving to dismiss based on the arbitration agreements. On appeal, the Fourth Circuit held that the non-signatory parent was entitled to compel the arbitration of the claims against it along with the claims against its signatory distributor subsidiaries since the claims against the parent and subsidiaries were based on the same facts and "inherently inseparable" and because the claims fell within the scope of the arbitration clauses that required all disputes arising in connection with the distribution agreements to be arbitrated.

Similarly, in *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999), the issue before the court was whether a signatory to an arbitration agreement could be compelled to arbitrate her claims against a non-signatory defendant at the non-signatory's request. The Eleventh Circuit held that the arbitration could be compelled against the signatory. *Id.* at 947. *Barrowclough v. Kidder, Peabody & co., Inc.*, 752 F.2d 923 (3rd Cir. 1985), *overruled on other grounds by Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110, 1112 (3rd Cir. 1993), similarly involved a signatory plaintiff who sought to avoid his contractual obligation to arbitrate and non-signatory defendants who voluntarily submitted to arbitration. Thus, none of these cases support Plaintiff Fitzgerald's position in this case.

Plaintiff also contends that courts have applied principles of agency law to compel non-signatories to arbitrate ERISA claims involving signatories and relies on *Pritzker*, *supra* in support of that contention. Again, Plaintiff misconstrues the case he relies upon.

In *Pritzker*, the plaintiff pension plan trustees were signatories to an arbitration agreement with a securities broker. The plaintiff signatories brought an ERISA action against the securities broker, as well as the broker's securities consultant agent and the broker's sister company that performed certain services on the accounts at issue. The defendants moved for arbitration. The plaintiffs objected to arbitrating their claims against the non-signatory agent and sister company. In holding that all of the defendants were entitled to the benefit of the arbitration agreement, the court held that an agent was bound by her principal's arbitration agreement and that the sister company could also compel arbitration under "agency logic" and because its liability was directly predicated on the fiduciary duty claim made against the broker.

Notably, the Third Circuit was later asked to extend the holding in *Pritzker* in *Bel-Ray Company Inc. v. Chermrite (PTY) LTD*, 181 F.3d 434 (3rd Cir. 1999), an action to force *non*-signatories to arbitrate the plaintiff's claims. The Third Circuit refused to do so. The court noted that "in *Pritzker*, the issue was whether a signatory to an arbitration agreement could be compelled to arbitrate claims it had against the agent of the other party to the agreement." *Id*. at 444. By contrast, the *Bel-Ray* court found that there was no basis for the plaintiff signatory in that case to compel non-signatories who were directors of the defendant corporation to arbitrate the plaintiff's claims when they had not

14

signed an agreement to do so.  *Id.* at 445-46.

This is the settled law of the Sixth Circuit, as well.  In *Arnold v. The Arnold Corporation-Printed Communications for Business*, 920 F.2d 1269 (6th Cir. 1990), the Sixth Circuit affirmed the decision of the district court compelling a plaintiff signatory to arbitrate the plaintiff's claims on the motion of the defendant non-signatory agents of the defendant broker, holding "[w]e believe that Arnold Corporation is entitled to have then entire dispute arbitrated, where, as here, the individual defendants and Carl Marks & Co. [the broker] wish to submit to arbitration."  *Id.* at 1282.

*Merrill Lynch Investment Managers v. Optibase, LTD*, 337 F.3d 125 (2nd Cir. 2003), a case relied upon by Defendants in this case, provides perhaps the best reasoning why Plaintiff Fitzgerald's "agency principles" argument should be rejected.

In the *Optibase* case, a non-signatory affiliate of Merrill Lynch filed suit to enjoin the signatory plaintiff from naming it in an arbitration before the NYSE.  In reversing the district court's refusal to enjoin the arbitration, the court held,

> Absent an express agreement to arbitrate, this Court has recognized only "limited theories upon which [it] is willing to enforce an arbitration agreement against a nonsignatory.  There are five such theories: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 4) estoppel.

337 F.3d at 129 (citation omitted).

As in the instant case, in *Optibase*, the signatory argued that the non-signatory Merrill Lynch affiliate should be compelled to arbitrate based on an agency theory because of the affiliate relationship and various other relationships between the

companies including common ownership and control, common directors, common business relationships and mutual benefits. Noting that "agency" denotes a fiduciary relationship "which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control," the Second Circuit rejected the signatory agent's argument. *Id.* at 130. The court found that when the district court had accepted the non-signatory's business relationships, affiliate relationship, and common control with a signatory company as sufficient to establish agency for purposes of compelling arbitration, the approach used by the district court

> dilutes the safeguards afforded to a nonsignatory by the ordinary principles of contract and agency and fails to adequately protect parent companies, the subsidiaries of which have entered into arbitration agreements. Anything short of requiring a *full* showing of some accepted theory under agency or contract law imperils a vast number of parent corporations.

*Id.* at 130 (emphasis in original).

Notably, the *Optibase* court distinguished from that the case before it cases in which a non-signatory attempted to compel a signatory to arbitrate. As held by the court, "[I]t matters whether the party resisting arbitration is a signatory or not" and cautioning that "a court should be wary of imposing a contractual obligation to arbitrate on a non-contracting party." *Id.* at 131 (citations omitted).

In this case, Fitzgerald argues that "HRB Management performs administrative functions in an agent-like capacity" and that the Plan was established for the benefit of H&R Block, Inc.'s subsidiaries, including HRBFA. Fitzgerald ignores, however, that neither the Plan nor HRB Management is an agent of HRBFA. As the court held in *AICO*

16

*v. Merrill Lynch & Co., Inc.*, 98 Fed. Appx. 44, 46-47 (2nd Cir. 2004), "[C]onclusory allegations of a general agency relationship between a signatory and non-signatory do not suffice to compel. . . unwilling non-signatories to arbitrate under that theory."

In sum, while having to litigate his claims in two different forums may be less preferable to Fitzgerald than the opportunity to arbitrate all of his claims in one forum, his preference for ease of litigation cannot be permitted to expand his right to arbitration. As the Supreme Court stated in *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1 103 S.Ct. 927 (1983):

> [F]ederal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement. Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.

460 U.S. at 20, 103 S.Ct. at 939 (emphasis in original; footnotes omitted). *See also*, *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287 (3rd Cir. 1986), *cert. denied*, 519 U.S. 1028 (1986) (enforcing an arbitration clause even if a party may have to "litigate its claims in three different fora with three different sets of rules").

## CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Petition to Compel Arbitration be, and hereby is, DENIED.

                                                s/Gerald E. Rosen
                                                United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 13, 2006, by electronic and/or ordinary mail.

                                            s/LaShawn R. Saulsberry
                                            Case Manager